IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MELISSA A. FREIGANG,<br><br>Plaintiff,<br><br>v.<br><br>WEBER COUNTY; GAGE FROERER, in his individual and official capacity; JIM HARVEY, in his individual and official capacity; SHARON BOLOS, in her individual and official capacity; and SARAH SWAN, in her individual and official capacity,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER OVERRULING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER AT ECF NOS. 52 & 53**<br><br>Case No. 1:25-cv-00082-TC-JCB<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

Plaintiff Melissa Freigang has objected (ECF No. 56) to the Magistrate Judge's Order (ECF No. 52; memorialized at ECF No. 53) granting Defendants Weber County, Gage Froeher, Jim Harvey, Sharon Bolos, and Sarah Swan's request for a protective order. For the reasons explained below, the court overrules Mrs. Freigang's objection.[1]

## BACKGROUND

Mrs. Freigang brings sex discrimination, age discrimination, retaliation, § 1983, and state law claims against her former employer, Weber County, and several people she worked with and

[1] In her Complaint, the Plaintiff uses "Mrs." to refer to herself, so in this Order the court does the same. (See, e.g., Compl. ¶ 2, ECF No. 1.) Outside the Complaint, (id. ¶ 16), the parties generally spell Ms. Swan's first name with an "h," (e.g., Answer, ECF No. 15 at 1 ("Sarah Swan")), accordingly, the court does the same.

for while she was employed at Weber County. Mrs. Freigang worked "as a part of Weber County's government" as Director (or Executive Director) of the Prosperity Center of Excellence (COE Director). (Compl. ¶¶ 1, 17, 19–20, 33–35, 44, ECF No. 1.) Central to the extant discovery dispute are allegations concerning one of the individual Defendants, Mr. Froerer, and a non-party in this case, Ms. Holin Wilbanks. Mr. Froerer "has been a Commissioner on the [Weber County] Commission from 2019 to the present." (Id. ¶ 23.) Commission members, among others, "supervised Mrs. Freigang's work." (Id. ¶¶ 19, 24.)[2] Ms. Wilbanks was the Weber County Director of Economic Development, but "resigned [from her job with Weber County] in lieu of termination in July 2021, two years before [Mrs.] Freigang was terminated." (Defs.' [First] Disc. Mot. at 2, ECF No. 27; Compl. ¶ 25, ECF No. 1.)

Mrs. Freigang alleges that while working for Weber County "[i]n 2020, [she] was required to do work that was outside of her duties that should have been done by … [Ms.] Wilbanks, a younger woman." (Compl. ¶ 25, ECF No. 1.) Mrs. Freigang alleges that she had to do so "because, on information and belief, [Ms.] Wilbanks was having an inappropriate intimate relationship with [Mr.] Froerer." (Id.) And that at one point, "Mrs. Freigang was interrogated for forty-five minutes about [Mr.] Froerer and [Ms.] Wilbanks'[s] relationship by [Mr.] Froerer's wife." (Id. ¶ 26.) Mrs. Freigang says she "reported this incident to Weber County Human Resources. [Mr.] Froerer then retaliated against" her by taking a number of retaliatory actions. (Id. ¶¶ 27–30.)

Mrs. Freigang alleges that she was treated differently than Ms. Wilbanks. Mrs. Freigang also alleges that she was treated differently than "Sara[h] Swan, a woman younger than Mrs.

[2] The Defendants deny Mrs. Freigang's allegations about supervision, asserting that they were unable "to meaningfully 'supervise[]' Ms. Freigang's work, given her failures to communicate and her resistance to any supervisory feedback." (Answer ¶ 24, ECF No. 15.)

Freigang, who was Director of Weber County's HR department, [and who] was given more respect and consideration in meetings than Mrs. Freigang." (Id. ¶ 31.) And Mrs. Freigang alleges that male colleagues received better treatment than she did. (See id. ¶¶ 32, 48.) After other events, including incidents of alleged discrimination, Mrs. Freigang was terminated from her job at Weber County in mid-August 2023—about three years after she was required to do some of Ms. Wilbanks's work. (See id. ¶¶ 25, 47.) A man was hired to replace her. (Id. ¶ 49.)

Throughout discovery in this case, Mrs. Freigang has sought information about the purported romantic or sexual relationship between Mr. Froerer and Ms. Wilbanks. On August 2, 2026, after Mrs. Freigang's Rule 30(b)(6) Notice alerted the Defendants that she planned to inquire into "[a]ny knowledge regarding a romantic relationship between Gage Froerer and Holin Wilbanks, including who knew and when," Weber County sought a protective order prohibiting questioning of its Rule 30(b)(6) witness on this issue. (Rule 30(b)(6) Not. ¶ 17, ECF No. 27-1 (emphasis omitted); ECF No. 27.) On August 26, 2026, the Honorable Jared C. Bennett, United States Magistrate Judge, granted the Defendants' request. (Dkt. Text Order, Aug. 26, 2026, ECF No. 36.)

In September 2026, Mrs. Freigang alerted the Defendants of her intention to question other witnesses about the alleged affair. (Pl.'s First Suppl. Disclosures, ECF No. 42-1.) Weber County moved for a protective order which would prohibit non-Rule 30(b)(6) witnesses from being questioned about the affair. (Defs.' [Third] Disc. Mot. at 2, ECF No. 42.) Mrs. Freigang opposed. (Opp'n to Mot. for Protective Order, ECF No. 44.) On September 28, 2026, Judge Bennett held a hearing on the Motion. (Min. Entry, ECF No. 52.) At the hearing, he granted the Defendants' Motion, and a written order followed. (Order, ECF No. 53.) Mrs. Freigang timely objected. (Pl.'s Objection, ECF No. 56.) She requests that Judge Bennett's Order be

"modif[ied] or set aside … to the extent it categorically prohibits questioning about the alleged relationship between [Mr.] Froerer and [Ms.] Wilbanks," and she requests "an order permitting narrowly tailored discovery concerning the existence and workplace nature of the relationship, [and] any supervisory pressure or employment benefits associated with it." (Id. at 13.)[3]

## STANDARD OF REVIEW

"When a magistrate judge issues an order on non-dispositive discovery matters and a party objects, the district court reviews the magistrate[ judge]'s order under the clearly erroneous or contrary to the law standard." Doe v. Intermountain Healthcare, Inc., No. 2:18-cv-00807, 2020 WL 3489646, at *2 (D. Utah June 26, 2020) (cleaned up). "The court applies the clearly erroneous standard to a magistrate[ judge]'s factual findings and will reverse those findings only if, after reviewing the evidence, 'the court is left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting Combe v. Cinemark USA, Inc., No. 1:08-cv-142, 2009 WL 3584883, at *1 (D. Utah Oct. 26, 2009)). "For a magistrate[ judge]'s legal conclusions, the court applies the contrary to law standard, which 'permits the district court to conduct a plenary review of … purely legal determinations and [to] set aside an order if the

[3] After the Objection was filed, the Defendants submitted, via email, a proposed order according to the timeline contemplated by DUCivR 72-2(b)(3). Additionally, the Official Transcript of the motion hearing before Judge Bennett was filed. (See ECF No. 60.) The court has considered the transcript in arriving at its decision and thanks the court reporter for her quick work in filing it. The court notes that Mrs. Freigang did not include the transcript with her objections. Had the Defendants not ordered it, (ECF No. 59), the court would have had to "speculate as to the [magistrate judge]'s reasoning," see Donohue v. Hoey, 109 F. App'x 340, 354 (10th Cir. 2004) ("[A party] cannot claim that the trial court abused its discretion without giving [the reviewing] court a chance to review the legal and evidentiary issues the district court considered."). Going forward, the court encourages Mrs. Freigang to consider whether she has provided this court with sufficient information to review issues she puts before it. The transcript remains restricted as of the date of this Order; accordingly, the Order does not refer to personally identifying information from the transcript. See DUCivR 5.2-1; DUCivR 5.2. Mrs. Freigang has filed, as an exhibit to her Objection, the Deposition of Sarah Swan, which was not filed as sealed, restricted, or otherwise confidential. (See ECF No. 56-1.)

wrong legal standard was applied.'" Id. (quoting Combe, 2009 WL 3584883, at *1). "Discovery is a nondispositive matter," so the court "must defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997) (citations omitted).

**ANALYSIS**

Mrs. Freigang makes several arguments about why she should be able to question witnesses about the alleged affair between Mr. Froerer and Ms. Wilbanks. First, she claims it is relevant to her sex discrimination claims, and therefore appropriate to be discussed at deposition; second, she makes a similar argument about her age discrimination claim; and third, she asserts that this topic bears on her supervisors' motive to retaliate against her. The court finds these arguments unavailing and that Judge Bennett's order was neither clear error nor contrary to law.

First, Mrs. Freigang says she should be allowed to ask about the alleged affair because of its relevance to her sex discrimination claims. Judge Bennett determined that the affair's nature and existence was not relevant for several reasons including, (1) the work Mrs. Freigang did that should have been done by Ms. Wilbanks was outside the limitations period, (2) Mrs. Freigang was not aware of the truth or falsity of the affair, let alone about any coercion in that relationship, and (3) whether the affair was coerced or not was not relevant to the questions of whether there was a pervasively hostile work environment or whether Mrs. Freigang was treated differently than comparators. (Hr'g Tr. 17, 23–24, 27–29, ECF No. 60.) Mrs. Freigang claims Judge Bennett's ruling was erroneous because "discovery may reveal whether the relationship was fully consensual or instead involved express or implicit workplace pressure arising from [Mr. Froerer's] supervisory authority" over Ms. Wilbanks. (ECF No. 56 at 5.) In her view, "[t]he

distinction matters" since a consensual relationship is "workplace conduct of a materially different character" than a coerced one. (Id.)

As an initial matter, Mrs. Freigang has no effective response to the fact that the work she did, that should have been done by Ms. Wilbanks, falls outside the limitations period. Judge Bennett appears to be correct about this conclusion, which supports a determination that his ruling was not in error or contrary to law. The same is true about his observation that Mrs. Freigang was not even aware of the truth or falsity of the affair, let alone about whether it was coercive.

In any event, the distinction between a coerced and a non-coerced relationship does not matter in a way that makes details of the affair relevant to Mrs. Freigang's claims. That the rumored affair (assuming it happened at all) was voluntary is not relevant because "[t]he existence of a consensual relationship between a supervisor and an employee is insufficient as a matter of law to establish a claim for sex discrimination." Maner v. Dignity Health, 9 F.4th 1114, 1126 (9th Cir. 2021); see also Taken v. Okla. Corp. Comm'n, 125 F.3d 1366, 1370 (10th Cir. 1997). Multiple courts—importantly, the Tenth Circuit—that have considered "paramour preference" plaintiffs have found that these plaintiffs are not discriminated against on the basis of sex. Such claims arise where a supervisor gives workplace advantages to someone they are attracted to or in a relationship with, and an employee who does not get those special benefits sues. Courts considering the issue have found that these plaintiffs are "in the same position as all men and all other women would have been—only [the coworker having the affair with the supervisor] was considered for [a] promotion[, or other workplace advantage] because of [the affair partner's] special relationship with [the supervisor]." Taken, 125 F.3d at 1370; Herron v. Chisolm, No. CV412-041, 2012 WL 4863128, at *1 (S.D. Ga. Oct. 4, 2012) (observing that

"discovery targeted at developing" facts about supervisor discriminating against individuals to whom he was not attracted "is not relevant to any valid claim or defense" because "sexual favoritism claim[s]" are "non-starters"); cf. Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 539 (10th Cir. 1994) (confirming evidence of supervisor's affair with his administrative assistant was not relevant to Title VII claim and "would only be relevant to a Title VII claim based on quid pro quo sexual harassment," which was not the type of claim plaintiff had brought). Even Mrs. Freigang acknowledges that "[a] consensual relationship, without evidence that favorable treatment was conditioned on sexual conduct or that an employee submitted to coercion, is insufficient by itself to establish sex discrimination." (See ECF No. 56 at 5; id. at 11–12 ("Plaintiff does not dispute" that "favoritism toward a romantic partner does not, by itself, constitute discrimination because of sex").)

To the extent Mrs. Freigang attempts to put herself outside the paramour preference context, she fails. (See id. at 11–12.) Mrs. Freigang is not claiming, for example, "that in order for a woman to [get favorable treatment], it was necessary to grant sexual favors, a condition not imposed on men." Toscano v. Nimmo, 570 F. Supp. 1197, 1199 (D. Del. 1983). Such a theory would appear to be dead in the water in light of Mrs. Freigang's allegations about Ms. Swan, her young, female coworker. Mrs. Freigang claims she "was treated differently than younger women" as shown by the "same pattern" in terms of how she was treated as compared to Ms. Wilbanks and as compared to Ms. Swan. (See Hr'g Tr. 5–6, ECF No. 60.) The limited evidence pointed to by Mrs. Freigang at this early stage in the case appears supportive of such a theory. (See Swan Dep. Tr. 22:22–25, Ex. 1 to Pl.'s Objections, ECF No. 56-1 (Question to Ms. Swan: "Did Froerer treat [Ms. Wilbanks] differently?"; Answer from Ms. Swan: "No, I wouldn't say he treated her any differently than me. We were on the same level, so it was easy. We were in the

same meetings.").) But there is no suggestion it was necessary for Ms. Swan to "grant sexual favors" to Mr. Froerer (or anyone) to rise to her position as Director of Weber County's HR Department. Whether an affair occurred or was just rumored to have occurred is therefore not relevant to establishing the differential treatment at the heart of Mrs. Freigang's claims. Judge Bennett did not clearly err or arrive at a decision contrary to law in determining that the nature of this alleged affair is not going to shed light on whether Mrs. Freigang experienced disparate treatment, and the level of coercion that occurred within the affair (assuming the affair occurred at all) does not change the equation.

Nor was Judge Bennett mistaken in determining that the details of the alleged affair were not relevant to the hostile work environment claim. Where Mrs. Freigang was not aware of whether the affair even happened, the details of how coercive it might have been—which were and remain unknown to her—could not have created a more or less pervasively hostile work environment. While "evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim," a plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment." Hirase-Doi v. U.S. W. Commc'ns, Inc., 61 F.3d 777, 782 (10th Cir. 1995), abrogated on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (citations omitted); see Little v. Gray Media Grp., Inc., 790 F. Supp. 3d 1195, 1223 (D. Kan. 2025), appeal dismissed, No. 25-3129, 2025 WL 4666261 (10th Cir. Nov. 12, 2025) (concluding that "other employees' experiences [could not] bear the weight of plaintiff's harassment claim" where "plaintiff fail[ed] to establish her contemporaneous awareness of the other employees' alleged harassment, i.e., while plaintiff claims she was experiencing sexual harassment"). Mrs. Freigang

did not have any such awareness. She cannot bootstrap her way into it now via details unearthed in discovery.

Second, Mrs. Freigang argues that she should be able to ask witnesses about the alleged affair because it is relevant to her age-discrimination claim and to Ms. "Wilbanks's favorable treatment as a younger comparator and to pretext." (ECF No. 56 at 9 (capitalization modified).) She says that inquiry into "[Ms.] Wilbanks's treatment" is "more than speculative" since Ms. Wilbanks is "identified as a comparator because she was a younger woman in a County management position subject to the Commissioners' authority." (Id.) But Mrs. Freigang is not looking to inquire into Ms. Wilbanks's "treatment." Mrs. Freigang is looking to inquire into Ms. Wilbanks's sex-life and romantic relationships. (ECF No. 42-1 at ¶ 6 ("Ms. Wilbanks is expected to testify regarding her relationship with [Mr.] Froerer.").) As even Mrs. Freigang has admitted, "alone[,] the actual existence of the alleged affair does not constitute gender or age discrimination." (ECF No. 44 at 2 (citing Taken, 125 F.3d 1366).) Mrs. Freigang's claim that inquiry into the alleged affair is "necessary to evaluate competing explanations for why a younger management employee received favorable treatment" years before Mrs. Freigang was terminated, (see ECF No. 56 at 10), is unavailing. The nature of the alleged affair is not going to illuminate whether Mrs. Freigang was treated disparately based on age any more than gender.

The authority Mrs. Freigang relies upon in her objections requires no different conclusion. For example, in Bobo v. United Parcel Service, Inc., the employer, UPS, "refused to provide discovery on the[] individuals [the plaintiff had identified as proposed comparators] and instead provided discovery only on … a single comparator of [UPS's] own choosing." 665 F.3d 741, 752 (6th Cir. 2012). Mrs. Freigang does not appear to claim that the Defendants have similarly stonewalled. Rather, the Defendants seek to keep one highly sensitive area of non-

party Ms. Wilbanks's life off-limits.[4] Ultimately, Mrs. Freigang has not brought forward authority indicating that refusing to provide information about a sensitive topic of dubious (if any) relevance amounts to a denial of access to comparator information as she suggests it is. (See ECF No. 56 at 11 & n.25.) To the contrary, the personal facts she seeks are out of step with the workplace-focused circumstances that the Tenth Circuit has listed as "relevant employment circumstances" to the similarly-situated inquiry. See Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005) ("Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." (citation omitted)). Indeed, given the nature of the facts Mrs. Freigang seeks, and their (at-best) tenuous relevance to her claims, the court is not convinced these facts are discoverable, even if they were of some relevance. See Fed. R. Civ. P. 26(b).

---

[4] Though it is not clear (and, as discussed herein, not relevant) whether the allegations about the affair at issue are well-founded, that Mrs. Freigang seeks to dredge up allegations about a highly sensitive topic is illustrated by the fact that unfounded allegations that a woman has had an extramarital affair fall into one of only four categories of defamatory words that constitute slander per se under Utah (and other states') law. See U.S.A. United Staffing All., LLC v. Workers' Comp. Fund, 213 P.3d 20, 26 (Utah Ct. App. 2009) (observing that "charge of the unchastity of a woman" is one of four categories of defamatory words that constitute slander per se (citation omitted)); John Bean Techs. Corp. v. B GSE Grp., LLC, 480 F. Supp. 3d 1274, 1322 & n.336 (D. Utah 2020) (citing Allred v. Cook, 590 P.2d 318, 320 (Utah 1979)) (same); Linebaugh v. Sheraton Mich. Corp., 198 Mich. App. 335, 338, 497 N.W.2d 585, 587 (Mich. App. 1993) (determining that a reasonable trier of fact could conclude that a cartoon that "could be interpreted as depicting plaintiff engaged in a sexual act with a male other than her husband … imputes to plaintiff a lack of chastity, which is actionable irrespective of special harm"). That said, this is an evolving area of the law. For example, until 2007, Utah's criminal slander statute provided that "[a] person is guilty of slander if he orally, falsely and knowingly, imputes to any female … a lack of chastity." I.M.L. v. State, 61 P.3d 1038, 1048 n.14 (Utah 2002) (quoting Utah Code Ann. § 76–9–507 (2001)). In 2007, Utah repealed that criminal slander provision. See Repealed by Laws 2007, c. 270, § 1, eff. April 30, 2007.

Third, Mrs. Freigang asserts that she should be allowed to ask about the alleged affair because it "bears directly on [Mr.] Froerer's motive to retaliate against [Mrs.] Freigang." (ECF No. 56 at 6 (capitalization modified).) But even she admits that "[w]hether the relationship actually existed is not necessary to determine whether [Mrs.] Freigang's report was protected." (Id.) The court is not persuaded that, despite this, the existence of the relationship "remains probative of [Mr.] Froerer's motive," as Mrs. Freigang claims. (See id.)

For one thing, it is unsupported conjecture on Mrs. Freigang's part that Mr. Froerer would have "had a stronger personal and professional reason to resent [Mrs. Freigang's] report" to "Human Resources that [Mr.] Froerer's wife had approached her about the suspected relationship and that the encounter made her uncomfortable" had "the report threatened to expose an actual workplace relationship." (Id. at 6–7; see id. at 9 (claiming existence of affair as relevant to "strength of the retaliatory motive").) Mrs. Freigang reporting false rumors that had made their way to Mr. Froerer's wife could have been equally upsetting or caused him to act in a retaliatory way. Cf. Ouazzani-Chahdi v. Greensboro News & Rec., Inc., 200 F. App'x 289, 292 (5th Cir. 2006) (observing that plaintiffs alleged "false[] report[]" of "extramarital affair" was defamatory (citing Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 422–26 (5th Cir. 2005))).

As Judge Bennett explained, the relevant piece to the retaliation claim is the report Mrs. Freigang made to HR and Mrs. Freigang's then-employer's response to it, not whether the relationship she reported was occurring or merely rumored. (Hr'g Tr. 29, ECF No. 60.) His conclusion that the alleged affair is not relevant to the retaliation claim was neither clear error nor contrary to law. Cf. Montoya v. City of Albuquerque, No. CIV 03-0261, 2004 WL 3426435, at *6 (D.N.M. May 18, 2004) (refusing to "allow testimony or evidence concerning the details of

[an] alleged affair" even where knowledge of and response to alleged affair was relevant, after finding "the fact that the affair occurred" was not relevant).

The court has reviewed the record, the briefing, and Judge Bennett's determination that the topic of whether there was an affair between Mr. Froerer and Ms. Wilbanks is off limits as a subject of inquiry in witness depositions in this case. Having done so, the court is neither left with a "definite [or] firm conviction" that he committed a "mistake," nor found that any parts of his Order are contrary to law. See Intermountain Healthcare, Inc., 2020 WL 3489646, at *2 (citation omitted). Mrs. Freigang's objection is, as a result, OVERRULED.

DATED this 10th day of November, 2026.

BY THE COURT:

Tena Campbell
United States District Judge